SHENK *v.* ALEX.

1. GUARDIAN AND WARD—DUTY OF GUARDIAN TO ACCOUNT FOR WARD'S ESTATE AFTER LATTER'S DEATH—FIDUCIARY RELATION.

   Although the relation of guardian and ward was terminated by the death of the incompetent, the duties of the guardian were not fully discharged until he had accounted for the assets of his ward's estate, and therefore he may not purchase the rights of those having an interest in the estate without disclosing to them the amount thereof, since his knowledge of the trust estate was superior to theirs.

2. SAME—GUARDIAN MAY NOT TAKE ADVANTAGE OF THOSE HAVING BENEFICIAL INTEREST IN WARD'S ESTATE—CANCELLATION OF INSTRUMENTS.

   Where a brother, who had acted as guardian of an incompetent brother until the latter's death, took advantage of the inexperience and lack of information of his sisters, and, without

disclosing to them the amount of the deceased's estate, of which he had superior knowledge, purchased their interest therein for one-third or one-fourth of the actual value, they are entitled to have the sale set aside in a court of equity, although there was no actual misrepresentation, since there was imposed upon him the duty of dealing fairly with his sisters in closing the estate.

Appeal from Alpena; Emerick (Frank), J. Submitted October 3, 1928. (Docket No. 28, Calendar No. 33,876.) Decided December 4, 1928.

Bill by Augusta A. Shenk and another against Herman Alex, individually and as administrator of the estate of August Alex, deceased, and another to set aside an assignment of their beneficial interest in deceased's estate on the ground of fraud. From a decree for plaintiffs, defendant Alex appeals. Affirmed.

*Carl R. Henry,* for plaintiffs.

*Lynch & Hinks,* for appellant.

NORTH, J. August Alex, who was a deaf mute from early childhood, died intestate at the age of 62 years, leaving an estate of $6,449.63. Over 20 years before his death he was adjudicated mentally incompetent, and during the last 11 or 12 years of his life his brother, Herman Alex, one of the defendants, acted as his guardian under an appointment of the probate court of Alpena county. The two plaintiffs are sisters of Herman and August Alex. The defendant Amelia Shubert is referred to in the record as a half sister of the deceased; and by agreement between these litigants, her interests are not to be affected by the outcome of this suit. On April 23, 1927, five days after August died, Herman filed a petition for appointment as administrator of his

brother's estate. On the 28th day of April, 1927, he filed his final account as guardian. This account was accepted, but the guardian was not discharged. Herman was appointed administrator of his brother's estate May 19, 1927. The plaintiffs entered into an arrangement with their brother Herman whereby each of them in consideration of $500 paid to her by Herman assigned to him all her interest in the estate of the deceased brother. One of these assignments was acknowledged April 29, 1927, and the other May 3, 1927. By their bill of complaint the plaintiffs seek a cancellation of their assignments to Herman on the ground of "misrepresentation, fraud and deceit." They claim they had no knowledge of the amount of the estate left by August, and that Herman would not tell them the amount of the same, but "intimated" it was small, and that $500 was a "fair share" for each sister; and unless that amount was accepted the estate would be handled in such a manner that the plaintiffs would get nothing. It is alleged in the bill that the plaintiffs were without business experience, that they acted without counsel and believed the statements of their brother, and that, relying upon his statements, they accepted the sum of money which was much less than their respective shares of the estate. The alleged misrepresentations and threatening statements are denied by the defendant Herman Alex. The plaintiffs had a decree in the circuit, and Herman Alex has appealed.

Referring to the alleged misrepresentations, the circuit judge said:

"I do not believe he made them. On the other hand it is conceded he did not state to them (the plaintiffs) the amount of their brother's estate. I think he should have done so fully. He was a trustee of his brother's property during his guardian-

ship, and at his death he became a trustee of the same with the heirs-at-law as beneficiaries."

In appellant's brief it is stated:

"There is only one legal question involved in this case: Was there a fiduciary relation existing between the plaintiffs and Herman Alex at the time he made the settlement with plaintiffs and acquired their interest in their brother's estate. If such fiduciary relation actually existed as a matter of law, the settlement should be set aside for it is not claimed by Herman that he did affirmatively disclose to plaintiffs the extent of the property in the estate. He explains this omission by stating that he supposed plaintiffs knew the extent of the deceased brother's estate and that it was not necessary for him to tell plaintiffs."

In behalf of the appellant the following is urged:

"It is the theory of defendants that the fiduciary relation existing between the guardian and ward terminated upon the death of August Alex; that Herman Alex was liable to account to the proper persons or court after the fiduciary relationship had been terminated, but the right to an accounting is not evidence of the existence of a fiduciary relationship.      *      *      *

"In short, it is defendant's contention that the fiduciary relationship between guardian and ward is a personal one and ends with the death of the ward, and it is something separate, distinct and different from the continuing obligation of the person who was formerly guardian to account to a court or persons."

We cannot accept this restricted interpretation of the law relative to the duties of one who acts in a fiduciary capacity as did the appellant. In a technical sense it is true that the relation of guardian

and ward was terminated by the death of August Alex; but the duties of the guardian who had been intrusted with the estate of the incompetent were not fully discharged until he had accounted for the assets of his ward's estate. Purchasing and taking an assignment of the respective rights of those who had an interest in the estate was nothing more than a method of settling. In doing this he was bound to exercise the utmost good faith and was not justified in withholding any information concerning his trust and thereby profiting at the expense of those for whose benefit the estate was then held.

The duty which this guardian owed to these plaintiffs was not unlike the duty imposed by law upon a guardian to act in the utmost good faith in accounting for the estate of a minor after the ward becomes of age. Upon attaining his majority the disability of the ward is removed and except for the accounting the guardianship is terminated *ipso facto.* *Tate* v. *Stevenson,* 55 Mich. 320. But the duty to fully disclose and truly account for the assets of the trust estate still exists notwithstanding the ward is *sui juris.* This duty is an attribute of the trust and binds the trustee until he has accounted and is discharged. Upon the death of August Alex these plaintiffs became possessed of a beneficial interest in the trust estate, and they were entitled to a full and fair disclosure and accounting incident to the estate held by the guardian. It is self-evident that during the years he had acted as guardian Herman Alex acquired a knowledge of the trust estate which was superior to that possessed by his sisters. He was still holding the property as a guardian while awaiting his appointment as administrator of the estate of his deceased ward. There was imposed upon him the duty of dealing fairly with his sisters

in closing the estate. He failed to do this, and instead he knowingly took an unfair advantage of their inexperience and lack of information, and purchased their shares in his ward's estate at one-third or one-fourth their actual value. They are entitled to equitable relief.

"If a person obtains the legal title to property * * * by virtue of a confidential relation and influence under such circumstances that he ought not, according to the rules of equity and good conscience as administered in chancery, to hold and enjoy the beneficial interest of the property, courts of equity, in order to administer complete justice between the parties, will raise a trust by construction out of such circumstances or relations; and this trust they will fasten upon the conscience of the offending party and will convert him into a trustee of the legal title, and order him to hold it or to execute the trust in such manner as to protect the rights of the defrauded party and promote the safety and interests of society. Such trusts are called *constructive* trusts." 1 Perry on Trusts (6th Ed.), p. 261.

"Trustees cannot use their relations to the trust property for their personal advantage." *Id.* p. 353.

See, also, *Ellicott* v. *Chamberlin,* 38 N. J. Eq. 604 (48 Am. Rep. 327); *Morris* v. *Vyse,* 154 Mich. 253 (129 Am. St. Rep. 472); and *Weir* v. *Union Trust Co.,* 188 Mich. 452.

The decree of the lower court is affirmed, with costs to the appellees.

Fead, C. J., and Fellows, Wiest, Clark, McDonald, Potter, and Sharpe, JJ., concurred.